IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| EVEN THOMAS | § | |
| | § | |
| V. | § | NO. 1:07-CV-573 |
| | § | |
| ODIS C. NORRIS, ET AL. | § | |

### MEMORANDUM OPINION RE MOTION FOR APPOINTED COUNSEL

By separate order, the court denied plaintiff's *pro se* motion for an appointed counsel.[1]  This opinion recites the court's underlying reasons.

### I. Parties; Nature of Suit

Plaintiff, Even Thomas (Thomas), is a resident of Beaumont, Jefferson County, Texas, proceeding *pro se*, but not *in forma pauperis*.[2]  He asserts causes of action under two federal statutes: the Whistleblower Protection Act of 1989[3] (WPA) and Title VII of the Civil Rights Act of 1964[4] (Title VII).

---

[1] This case is assigned to Chief United States District Judge Thad Heartfield.  It is referred to the undersigned for determination of all pretrial matters pursuant to General Order 05-07.

[2] Plaintiff paid the full filing fee when he filed his complaint.  See Docket No. 1.

[3] 5 U.S.C. §§ 1201-1222.

[4] 42 U.S.C. §§ 2000e to 2000e-17.

Defendants are Odis C. Norris, Principal of South Park Middle School; Beth Fischenich, Former Assistant Superintendent of Beaumont Independent School District (BISD); Carrol A. Thomas, Superintendent for BISD; Woodrow Reece, Vice President of the School Board; and six members of BISD's Board of Trustees.[5]

## II. ALLEGED FACTS AND PROCEDURAL BACKGROUND[6]

Thomas is a black employee of BISD. On September 13, 2005, he was employed as Assistant Principal at BISD's South Park Middle School. Thomas alleges that a student's parent complained that her bi-polar child was not receiving appropriate educational services. Thomas accompanied the parent and the child to Norris's office, and requested that Norris meet with him and the parent to resolve the complaint. Norris – who also is black – declined to meet with the parent, but summoned Thomas into his office. Upon learning of the purpose of Thomas's visit, Norris became angry, and physically threatened Thomas while using abusive language.

---

[5] The six BISD trustees are: Martha Hicks, Terry D. Williams, Janice Brassard, William Nantz, Ollis E. Whitaker, and Howard J. Trahan.

[6] The facts reported here are those alleged in the *pro se* complaint or reported under oath at an evidentiary hearing convened on March 10, 2008, to provide Thomas with an opportunity to clarify and amplify his lay allegations. See Spears v. McCotter, 766 F.2d 179, 181-82 (5th Cir. 1985).

Thomas immediately complained of Norris's behavior to the superintendent and followed up through BISD's internal grievance procedure. His grievance was denied at all levels, including review by BISD's school superintendent, Dr. Carrol Thomas, who also is black. The four-step grievance process concluded before the full board of school trustees on June 15, 2006.

While the grievance was pending, Thomas was transferred to another school. Once the grievance process was completed, he was transferred yet again. He also was demoted in rank and pay. He now is a classroom teacher at BISD's Dunbar Elementary campus.

Thomas believes that Norris's actions constituted a hostile work environment (harassment). He believes that the reprimands he received and his ultimate transfer and demotion constitute retaliation for his having complained and filed a grievance. Thomas also believes that he is a victim of reprisal for having disclosed illegal conduct on the part of Principal Norris.[7]

---

[7]   The complaint mentions another cause of action for unspecified "civil rights" violations. At the evidentiary hearing, however, Thomas averred no facts other than those arguably relevant to the WPA and Title VII claims.

## III. MOTION FOR APPOINTED COUNSEL

Plaintiff requests that the court appoint counsel to represent him in this action.  Title VII contains explicit authority for appointment of counsel.[8]  WPA does not contain a corresponding provision.  However, the court assumes *arguendo* that it has inherent authority to appoint counsel.  Further, the court assumes that the applicable standards for appointing counsel in a private WPA action are the same as the requirements stated below for appointing counsel in a Title VII case.

A civil litigant proceeding under Title VII has no absolute right to appointed counsel.  Salmon v. Corpus Christi I.S.D., 911 F.2d 1165, 1166 (5th Cir. 1990); Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988); see also 42 U.S.C. § 2000e-5(f)(1).  Rather, the decision to appoint counsel is left within the "sound discretion of the trial court."  Gonzalez v. Carlin, 907 F.2d 573, 579 (5th Cir. 1990) (citing Caston v. Sears, Roebuck & Co., 556 F.2d 1305, 1308 (5th Cir. 1977)).  Three factors are relevant to the exercise of sound discretion: (1) whether the movant has the financial ability to retain counsel; (2) whether the movant has made a diligent effort to retain counsel; and (3) whether the movant presents a meritorious claim.  Gonzalez, 907 F.2d at 580 (citing Caston, 556 F.2d at 1309).  "No single factor is conclusive."  Id.

---

[8]   See 42 U.S.C. § 2000e-5(f)(1).

Regarding the third factor, early evaluation of the potential merits of a *pro se* litigant's claim is very important because initial screening by the court can eliminate patently frivolous actions. However, early evaluation should interpret *pro se* complaints liberally. See Peña v. United States, 122 F.3d 3, 4 (5th Cir. 1997). Moreover, in making such evaluation, the court must weigh all alleged facts in a movant's favor. This necessarily means the court should accept movant's allegations as true, unless they rise to the level of being wholly irrational or incredible. See Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). Weighing facts in a movant's favor also means the court should grant movant all reasonable inferences of his factual contentions. See Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991). Therefore, if movant asserts a recognized legal theory and facts supporting such a claim, the claim is not wholly frivolous and should survive frivolousness review. See Denton, 504 U.S. at 32-33.

### IV. Discussion and Analysis

This section applies the relevant factors identified in the preceding section. The first two – financial ability and diligence – require little analysis. Thomas testified that he is able and willing to pay court and attorney fees. He is currently employed by the BISD as a teacher in Dunbar Elementary, and his wife also is

gainfully employed as a BISD teacher. Further, plaintiff has a rental property. This factor obviously weighs against appointing counsel.

As for the second factor, Thomas has made reasonably diligent efforts to retain counsel. His motion names two attorneys who refused to take his case, including a prominent and experienced attorney who represented Thomas during administrative grievance proceedings.[9] At the evidentiary hearing, plaintiff testified that he contacted at least eight additional lawyers who refused to represent him after he sent them paperwork, spoke with them on the phone, or discussed the case in person. Plaintiff discussed a contingent fee or other fee arrangement with at least one of the attorneys. Plaintiff also contacted the State Bar of Texas for assistance in locating legal resources.

On balance, this factor probably weighs in favor of appointing counsel, although not strongly. The court may properly view a motion to appoint counsel with circumspection when the evidence reflects that multiple counsel, including counsel with special expertise, have declined to accept employment by a paying client. Such fact constitutes strong circumstantial evidence that seasoned and competent counsel view Thomas's claims as unmeritorious.

---

[9] Thomas's attorney in the grievance proceedings was Larry Watts, whom the court recognizes as an active litigator in civil rights and employment discrimination litigation. A computerized WestLaw search reflects that Mr. Watts was counsel of record in 40 appellate and district court cases involving Title VII alone.

The final factor is whether Thomas presents a meritorious claim.  This requires more extensive discussion.

A.          **Whistleblower Protection Act Claim**

WPA was enacted to "protect *federal employees* against agency reprisals for whistleblowing activity, such as disclosing illegal conduct, gross mismanagement, gross wasting of funds or actions presenting substantial dangers to health and safety." Charles R. Richey, 1 Manual on Employment Discrimination § 10:4 (2008) (citing Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002)) (emphasis added); see 5 U.S.C. § 2302(b)(8).  To invoke WPA protections, an employee must bring a complaint to the Office of Special Counsel (OSC) first.  See 5 U.S.C. § 1214(a)(1)(A).  If not satisfied with OSC's initial determination, the employee may appeal to the Merit Systems Protection Board (MSPB).  See 5 U.S.C. § 1214(a)(3); 5 C.F.R. § 1209.5(a); Ellison v. Merit Systems Protection Bd., 7 F.3d 1031, 1035-36 (Fed. Cir. 1993).  To prevail, the employee must show by a preponderance of the evidence that a protected disclosure was made, and that the disclosure was a contributing factor in an adverse personnel action.  Carson v. Dep't of Energy, 398 F.3d 1369, 1377 (Fed. Cir. 2005).  Thereupon, MSPB can order that the employee be placed in the position he would have occupied if not for the prohibited personnel action and be reimbursed for attorney fees, back pay and benefits, medical costs, and other reasonable and foresee-able consequential damages.  5 U.S.C. § 1214(g).

Employees may then seek judicial review of adverse MSPB rulings in the Court of Appeals for the Federal Circuit or, in a "mixed case," in a federal district court.[10]  5 U.S.C. §§ 1214(c), 7703(b)-(c); See Barnes v. Small, 840 F.2d 972, 979 (D.C. Cir. 1988).  Judicial review of MSPB rulings on WPA complaints is limited to setting aside agency action, findings, or conclusions that are (1) arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with the law; (2) obtained without procedures required by law, rule, or regulation; or (3) unsupported by substantial evidence.  5 U.S.C. § 7703(c).  In appropriate cases, the court can remand the matter to the MSPB with instructions to award relief.  See, e.g., Gilbert v. Dep't of Justice, 334 F.3d 1065, 1075 (Fed. Cir. 2003) (reversing and remanding MSPB decision with instructions to order reinstatement of plaintiff and award incidental relief).

A jurisdictional prerequisite to review in any federal court is exhaustion of the administrative remedies recited in the preceding paragraph.  See Stella, 284 F.3d at 142-44 (it was proper for the district court to dismiss plaintiff's WPA claim on jurisdictional grounds when plaintiff failed to exhaust her administrative remedies); see also Richards v. Kiernan, 461 F.3d 880, 885-86 (7th Cir. 2006) (stating that exclusive remedy for claims brought under the WPA is the Civil Service Reform Act,

---

[10]  "Mixed cases" involve allegations of employment discrimination "based on race, color, religion, sex, national origin, age or handicap" as well as "additional allegations that the MSPB has jurisdiction to address."  See 29 C.F.R. § 1614.302(a)(1).

which requires complaints to be brought to the MSPB, then the Federal Circuit); Hendrix v. Snow, 170 F. App'x 68, 78-79 (11th Cir. 2006); Harris v. Evans, 66 F. App'x 465, 466-67 (4th Cir. 2003); Grisham v. United States, 103 F.3d 24, 26 (5th Cir. 1997) (stating that a plaintiff's WPA remedies are exclusively those provided under the Civil Service Reform Act).

Thomas clearly has not alleged a potentially meritorious cause of action under WPA. First, he is not a federal employee. Second, he did not file a complaint with OSC or obtain a ruling from MSRB. In light of this fatal jurisdictional deficiency, this court would act irresponsibly in appointing a counsel to represent Thomas for a private cause of action under WPA.

**B.    Title VII**

Title VII prohibits discrimination in the workplace on the basis of "race, color, religion, sex, or national origin . . . ." 42 U.S.C. 2000e-2. To enhance compliance with federal policy for equal employment opportunities for these protected classes of employees, Title VII authorizes persons who believe themselves to be victims of unlawful discrimination to bring private enforcement causes of action after exhausting administrative remedies. 42 U.S.C. § 2000e-5(f)(1). A precondition of filing a Title VII suit in federal district court is exhaustion of administrative remedies. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002) (citing Dao v. Auchan

Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996)).  Before instituting suit, aggrieved employees must first make a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and secure from the EEOC a "right-to-sue" letter.  Taylor, 296 F.3d at 378-79; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973).

Moreover, Title VII only authorizes a private suit against an "employer."  It does not authorize suits against co-workers or supervisors in their individual capacities, even though such persons may have engaged in discriminatory conduct.  Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999).  An improper suit against an individual who is not an employer is subject to dismissal under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  See id.[11]

With these governing principles in mind, two glaring deficiencies in Thomas's complaint are self-evident: (1) failure to successfully exhaust administrative remedies, and (2) failure to state a claim upon which relief can be granted.  The latter deficit is twofold.  Thomas does not name his employer, BISD, as a defendant, and he rejects

---

[11] Under some circumstances a supervisory employee may be named as a defendant in his capacity as an *agent* of the employer. Vance v. Union Planters Corp., 279 F.3d 295, 299 (5th Cir. 2002) (holding that an employee can be sued as an agent if he is a supervisor and has significant control over hiring). Even then, however, the agent is not individually liable. Indest, 164 F.3d at 262 (holding that Congress' only intent was to incorporate *respondeat superior* liability under Title VII).

the suggestion that the adverse employment actions of which he complains emanated from racial or any other form of discrimination prohibited by Title VII. He, Norris, and Superintendent Carrol Thomas are all black, and plaintiff testified that he did not think he could be a victim of racial discrimination because he and Norris are both black.

In an abundance of caution, and for the sake of analytical completeness, the court chooses not to base its decision on these deficiencies. Thomas testified that he attempted to file an administrative complaint with EEOC, but EEOC refused to accept his complaint. Second, an amended complaint naming Thomas's employer (BISD) as defendant could easily cure one Rule 12(b)(6) deficiency. The remaining flaw – failure to allege discrimination based on race – ultimately may prove fatal, but at this initial state, the court will overlook all technical pleading deficiencies and focus instead on the alleged facts.

Title VII's protection extends, in certain circumstances to invidious employment discrimination consisting of a hostile work environment or retaliation for engaging in activities protected by Title VII. These protections are expressly invoked by Thomas, and will be examined separately in light of his factual averments.

1.     Framework for Title VII Analysis

Plaintiffs may prove Title VII claims either by direct or circumstantial evidence.  See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  When – as here – a plaintiff relies on circumstantial evidence, courts use a modified "McDonnell Douglas test" that involves shifting burdens of production.  McDonnell Douglas Corp., 411 U.S. at 802-04; Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (describing the Fifth Circuit's modified McDonnell Douglas approach to employment discrimination cases where mixed-motive analysis might apply).  Under this test, a plaintiff must first establish a *prima facie* case of his Title VII cause of action.  The burden then shifts to the employer/defendant to provide a legitimate, non-discriminatory or non-retaliatory reason for its actions.  McDonnell Douglas Corp., 411 U.S. at 802-04; McCoy, 492 F.3d at 557 (applying McDonnell Douglas test to retaliation case); Hayatdavoudi v. Univ. of La. Sys. Bd. of Trustees, No. 00-30389, 2000 WL 1835143, *3 (5th Cir. 2000) (applying McDonnell Douglas test to hostile work environment case).  When the defendant employer thus rebuts the *prima facie* case, the burden then shifts back to the plaintiff to show that either: (1) the reason provided is not true and is actually a pretext for the prohibited discrimination or retaliation (the "pretext alternative"), or (2) the reason provided is true, but is only one of the reasons for the conduct, and another reason is the employee's protected characteristic (the "mixed-motive alternative").  McDonnell

Douglas Corp., 411 U.S. at 802-04; Keelan, 407 F.3d at 341; see also McCoy, 492 F.3d at 557.

### 2. Hostile Work Environment

A *prima facie* case of hostile work environment is established by evidence that: (1) the employee is a member of a protected class; (2) he was subject to unwelcome harassment *based on race, gender, religion, or national origin*; (3) the harassment affected a term or condition of his employment; and (4) the employer knew or should have known about the harassment and failed to take prompt remedial action. See Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 347 (5th Cir. 2007); see 42 U.S.C. § 2000e-2(a)(1). Title VII is violated only "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)) (internal citations omitted). The conduct must be severe enough to create an objectively hostile environment based on the victim's race, gender, religion, or national origin, and the victim must himself subjectively perceive it to be hostile. Id. at 21-22 (stating that unless the victim actually perceives the conduct to be hostile it could not have altered the conditions of employment).

Courts employ a "totality-of-the-circumstances" test to determine when a hostile work environment existed.  Turner, 476 F.3d at 347.  Thus, courts examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris, 510 U.S. at 23.

Plaintiff, a black male, clearly is within a federally-protected class.  He alleges that Principal Norris (also a black male) verbally and physically threatened him at South Park Middle School in front of students.  The following day, he was reprimanded by Ms. Fischenich, the Former Assistant Superintendent of BISD, for having reported the incident to Dr. Carrol Thomas, the BISD Superintendent.  Thomas subjectively felt harassed and retaliated against for complaining to the superintendent and for hiring a lawyer and filing a grievance.

These allegations, taken as true and with reasonable inferences drawn therefrom, fail to establish a *prima facie* case of discrimination based on a hostile work environment.  There is no hint – and Thomas affirmatively rejects the suggestion – that the harassing actions of Norris, Fischenich or Dr. Carrol Thomas were based on plaintiff's race, color, religion, sex, or national origin.  Second, while Norris's alleged conduct arguably constituted more than an offensive utterance, it was a single instance of physical humiliation.  There is no evidence that such conduct was

pervasive, or permeated the workplace, or was so severe as to unreasonably interfere with Thomas's work performance.

Under these facts, Thomas does not present a potentially meritorious cause of action for hostile work environment under Title VII.  There is, therefore, no sound basis for the court to appoint counsel to represent Thomas in prosecuting this claim.

    3.    <u>Retaliation</u>

A *prima facie* case of retaliation actionable under Title VII is established by evidence that: (1) an employee engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action.  <u>Turner</u>, 476 F.3d at 348; <u>see</u> 42 U.S.C. § 2000e-3(a) (primary source of protection against retaliation for those opposing discrimination or participating in the Title VII process).  These three elements use terms of art that are not self explanatory.  Thus, they require further elaboration:

    *Protected Activity*

This term encompasses *opposition* to any practice rendered unlawful by Title VII (the "opposition clause"),[12] and *participation* in Title VII processes (including making a

---

[12]    An example of opposition is complaining to the Fire Chief about sexually inappropriate questions and their impact on plaintiff's interview with Fire Department Review Board.  <u>Montemayor v. City of San Antonio</u>, 276 F.3d 687,
(continued...)

charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII) (the "participation clause").[13] 42 U.S.C. 2000e-3(a). When proceeding under the opposition clause, a plaintiff need not prove that the discriminatory practices alleged were unlawful in fact; but rather that he had a *reasonable belief* that such conduct constituted unlawful employment practices protected by Title VII. Turner, 476 F.3d at 348; De Anda v. St. Joseph Hosp., 671 F.2d 850, 853 n.2 (5th Cir. 1982). When proceeding under the participation clause, there is no "reasonable belief" requirement; however, the plaintiff may be required to show that he made his claim alleging discrimination in good faith. See Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir. 1969) (holding that letter to EEOC was protected activity even though contained false, but not malicious, accusations); Mattson v. Caterpillar, Inc., 359 F.3d 885, 891-92 (7th Cir. 2004) (holding that a good faith, reasonable requirement applies to retaliation claims based on the participation clause).

*Adverse Employment Action*

This term encompasses any act that a reasonable employee would find to be materially adverse; that is, the act is such that it might well "dissuade[] a reasonable

---

[12](...continued)
689-90 (5th Cir. 2001).

[13] An example of participation is filing a charge with the EEOC alleging racial discrimination in hiring practices. De Anda v. St. Joseph Hosp., 671 F.2d 850, 852 n.1 (5th Cir. 1982).

worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006); see also McCoy, 492 F.3d at 559.

*Causal Link*

To satisfy this element, the complaining employee must show that "the employer's [adverse] decision . . . was based in part on knowledge of the employee's protected activity." Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998). Therefore, the causal link required to satisfy this element is less stringent than the "but for" standard used in the ultimate determination; plaintiff "need not prove that [his] protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996) (citing De Anda, 671 F.2d at 857 n.12).

Thomas fails to establish the first element of a *prima facie* case for actionable retaliation. He proceeds under the "opposition clause" because he opposed Norris's conduct by complaining to and filing a complaint with his superiors, and taking part in an internal grievance procedure. This requires more than a showing of subjective good faith; it requires a showing that Thomas had an objectively reasonable belief that Norris's conduct – about which Thomas grieved – was an unlawful employment

practice prohibited by Title VII.  Thomas makes no such showing.  He does not complain that harassment by Norris was based on his race, gender, religion, or national origin.  He did not subjectively believe he was being harassed based on one of these protected characteristics.  Therefore, it was not objectively reasonable for him to believe that he was complaining of activity proscribed under Title VII.  See, e.g., Turner, 476 F.3d at 349 (holding that it was not reasonable to believe that email containing no reference to discriminatory conduct constituted unlawful employment practice under Title VII); Watts v. Kroger Co., 170 F.3d 505, 511 (5th Cir. 1999) (finding that complaints to manager regarding supervisor's comments about personal life did not constitute protected activity because employee did not report sexual harassment).  Under that circumstance, even if retaliation did follow, it is not actionable under Title VII.

This result, while seemingly harsh, is apposite nonetheless.  Title VII is not a panacea for all workplace injustices, nor does it prescribe a "general civility code for the American workplace . . . ." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998).  Rather, Title VII addresses only a limited and discrete set of practices that Congress prohibits.  As stated earlier, to invoke Title VII's protection, a worker must allege and be prepared to show employment discrimination based on *race, color, religion, sex*, or *national origin*, or retaliation for having complained of such.  It simply is not enough to show unfair or arbitrary treatment or retaliation unrelated

to these categories. Title VII does not protect workers from personal animosity and obnoxious behavior in the abstract. See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

To repeat, successful Title VII plaintiffs must show that unfair treatment, animosity, behavior, etc. was *on account of* race, color, religion, sex, or national origin, or for claiming such. Thomas simply has no such evidence. Accepting his factual allegations as true, he was treated rudely, physically threatened, and unjustly treated in the grievance process. But none of his alleged facts implicate Title VII concerns. Therefore, the court lacks justification for appointing counsel to represent Thomas in a Title VII hostile work environment or retaliation claim.

### Conclusion

An order denying plaintiff's motion for appointment of counsel will be entered separately.

SIGNED this __28__ day of March, 2008.

*Earl S. Hines* (signature)
Earl S. Hines
United States Magistrate Judge