# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

———

No. 1:07-CV-573

———

EVEN THOMAS

                      Plaintiff

v.

ODIS C. NORRIS, ET AL.

                      Defendants

———

## Memorandum Opinion Re Motion to Dismiss

———

This opinion addresses defendants' motion to dismiss, and, alternatively, motion for summary judgment.

### I.  Parties; Nature of Suit

Plaintiff, Even Thomas ("Thomas"), proceeds *pro se*, and is a resident of Beaumont, Jefferson County, Texas.  He asserts causes of action arising out of his employment by Beaumont Independent School District ("BISD") as an assistant principal and teacher.

Defendants are Odis C. Norris, Principal of South Park Middle School; Beth Fischenich, Former Assistant Superintendent of BISD; Carrol A. Thomas, Superintendent of  BISD; Woodrow Reece, Vice President of the School Board; and six other members of BISD's Board of Trustees: Martha Hicks, Terry D. Williams, Janice Brassard, William Nantz, Ollis E. Whitaker and Howard J. Trahan..  BISD also is a defendant.  All defendants are citizens of Texas.

## II.  Proceedings

Thomas filed an original complaint on August 17, 2007.  Because of Thomas's lay status and also because his factual allegations were unclear, the court convened an evidentiary hearing, which Thomas attended in person, on March 10, 2008.  Thomas responded under oath to screening questions propounded by the court, and amplified his written allegations through sworn, oral testimony.[1]  Subsequently, Thomas filed an amended complaint on November 11, 2008.

Thomas's complaint and motion papers, considered collectively, allege constitutional and statutory causes of action.  Statutory causes of action are brought under the Whistleblower Protection Act of 1989 ("WPA")[2] and Title VII of the Civil Rights Act of 1964 ("Title VII").[3]  Constitutional claims are asserted under the First Amendment[4] and the Due Process Clause of the Fourteenth Amendment.[5]  In addition, the court – consistent with its duty to construe *pro se* claims liberally[6] – elects to consider whether Thomas's factual allegations might give rise to a third statutory cause of action under Title I of the Americans with Disabilities Act ("ADA").

---

[1]  The evidentiary hearing was of the type approved for screening *pro se* complaints in <u>Spears v. McCotter</u>, 766 F.2d 179, 181-82 (5th Cir. 1985).

[2]  5 U.S.C. §§ 1201-1222.

[3]  42 U.S.C. §§ 2000e to 2000e-17.

[4]  U.S. CONST. amend. I

[5]  U.S. CONST. amend. XIV

[6]  Allegations of *pro se* litigants must be construed liberally, <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), meaning that lay plaintiffs need not necessarily neatly place their factual allegations within a correct legal framework.  <u>See</u> *e.g.*, <u>Randall v. Reeves</u>, 189 F.3d 466 (5th Cir. 1999) (unpublished table decision) (construing a complaint that improperly pled Texas Tort Claims Act violations as alleging state common law claims in the context of the alleged facts).

## III.  Factual Background

Facts recited here are derived from Thomas's *pro se* complaints, briefs and other papers submitted by him, testimony given by Thomas at the evidentiary hearing described above, and facts advocated by the defendants to which Thomas has interposed no objection.  A precise chronology of relevant events is muddled somewhat, but few particulars of that chronology matter to the decision at issue.

─────────────────────────

Thomas is an African American who was employed by BISD as an Assistant Principal at South Park Middle School in Beaumont.  He held a temporary certification from the Texas Education Agency to serve as an assistant principal for grades K - 12 .

On September 13, 2005, a bi-polar student's parent complained that her child was not receiving appropriate educational services.  Thomas accompanied the parent and student to Principal Norris's office.  Thomas requested that Norris meet  with the parent to resolve the complaint.  Norris declined to meet with the parent, and then summoned Thomas into his office.  Once there, Norris – who also is African American – physically threatened Thomas while using abusive language.

Thomas promptly complained of the incident to Superintendent Thomas. Meanwhile, Norris complained of Thomas's behavior to Assistant Superintendent, Beth Fischenich.  Fischenich sent a letter to Thomas stating that if he continued to fail to abide by Norris's decisions, he (Thomas) could face being transferred to a classroom as there were no other administrative openings. Fischenich also referenced Thomas's inability to follow directives of three prior principals, thereby creating disharmony within the administration.  See Pl.'s Compl., Ex. 4, Attach. B, August 17, 2007.

In early October – two or three weeks after the incident with Norris – Thomas was ordered by his personal physician to go on leave due to post-traumatic stress disorder. Thomas applied for and was granted temporary disability leave. Thomas believes that this disability leave began on October 7, 2005, and continued until late April or early May, 2006.

In the meantime, Thomas retained an attorney. With counsel's assistance, Thomas filed internal grievances concerning three separate incidents, only two of which are relevant to this suit: (1) the confrontation with Norris, and (2) the reprimand by Fischenich.[7] BISD's grievance procedure involved four levels, and all grievances were denied at all levels. Grievance proceedings commenced on October 11, 2005, and continued through at least June 19, 2006, when denials of Thomas's Level III appeals were affirmed, following a hearing, by the full board of school trustees.

While grievance proceedings were underway, and while Thomas was still on temporary disability leave, Mae E. Jones-Clark, Chief of Staff and Academic Affairs (also African-American, but not a defendant), mailed to Thomas a directive to appear in her office on January 13, 2006 to discuss Thomas's placement for the remainder of the year. Thomas claims he did not receive the letter until January 17, 2006, and it is unclear whether the meeting ever took place. In any event, Thomas's official duty station was transferred to Lucas Elementary School as Vice Principal on January 25, 2006. Superintendent Thomas – who also is African American – stated in his decision denying the Level III grievances that the reason for this change of Thomas's official duty

---

[7] The third incident involved a counselor and a reprimand given by the principal on or about March 4, 2005.

station was "numerous incidents of conflicts with staff and campus administration." See Pl.'s Compl., Ex. 9, ¶ 5, August 17, 2007.

On March 30, 2006, Sybil L. Comeaux, BISD's Executive Director of Personnel (also African-American, but not a defendant), informed Thomas by certified letter that the maximum number of days available under the school district's temporary disability leave policy is 180 days, and that Thomas had exceeded that amount of leave because he had been absent for more than 180 days as of February 18, 2006. Ms. Comeaux informed Thomas that his position would be filled by another person until he was released by his treating physician to return to full-time duty. Further, Ms. Comeaux stated that upon presentation of a written physician's release, Thomas would have an opportunity to be placed in the first available job for which he was qualified.

Thomas then obtained a physician's release and did return to work in late April or early May, 2006. He worked as Vice Principal at Lucas Elementary school for a fairly short period of time until July, 2006, when he again went on disability leave. In August, 2006, and while on such leave, his official duty station was transferred again to Smith Middle School. His classification as Vice Principal and his rate of pay remained unchanged.

In late December, 2006, or early January, 2007, Thomas filed an ethics complaint against Norris with the Texas Education Agency.[8] During this general time frame, he also filed a complaint against BISD's attorney, Melody Chappel, Esq.[9] Lastly, Thomas contacted the Equal Employment Opportunity Commission ("EEOC"). When he met with an EEOC representative at the

---

[8] Thomas charged that Norris lied when he denied that he attacked Thomas, and also that Norris made false accusations at a Texas Worker's Compensation Board hearing. The Texas Education Agency denied the code of ethics complaint on October 9, 2008.

[9] The State Bar of Texas denied the complaint against Ms. Chappell on March 8, 2007.

Houston office, he was told that he did not have a claim, and that EEOC was not going to pursue it. Thomas never filed a formal charge with EEOC; there was never an official EEOC determination, and EEOC never issued a right-to-sue letter.

On January 25, 2007, Thomas was transferred again, this time to Vincent Middle School. He also was demoted in rank and pay from an assistant or vice principal to teacher. Thomas believes that this transfer and demotion were due to retaliation and reprisal for his grievances and disclosures of illegal conduct by Norris, rejecting BISD's explanation that demotion to the rank of teacher occurred because Thomas's temporary certification to serve as an assistant principal had expired on that day.

In August, 2007, Thomas returned to work as a teacher. At the time of the evidentiary hearing before the court on March 10, 2008, Thomas remained employed by BISD as a classroom teacher. At that time, however, he was assigned to yet another campus, Dunbar Elementary School.

Thomas alleges that Norris's actions constituted harassment and created a hostile work environment. Thomas contends that the reprimands he received and his ultimate transfer and demotion amount to retaliation for his having complained and filed a grievance. Thomas also believes that he is a victim of reprisal for having disclosed illegal conduct on the part of Principal Norris and that his First Amendment right to free speech was violated on the same grounds. Finally, Thomas contends that his Due Process rights were violated because BISD failed to provide him with a meaningful opportunity to be heard regarding the confrontation with Norris as well as his subsequent transfer to different schools and demotion in rank and pay.

## IV.  Defendants' Motion to Dismiss and for Summary Judgment

Defendants move for dismissal, or, alternatively, for summary judgment. Specifically, defendants argue that the court lacks subject-matter jurisdiction over Thomas's proposed WPA and Title VII causes of action, and, alternatively that Thomas has failed to allege facts that would entitle him to recover in any event.  Defendants argue that Thomas has no evidence supporting his proposed constitutional claims.  Finally, defendants contend that Thomas's claims against defendants are barred by the doctrines of qualified and professional immunity, and that punitive damages are not recoverable in this action.[10]

Thomas opposes defendants' motion to dismiss in its entirety, and responds specifically  with regard to his Title VII claim and Due Process claim to various arguments advanced by defendants.

## V.  Legal Standards

Procedural standards that govern litigants and courts in civil cases are enacted by Congress and are codified as "Federal Rules of Civil Procedure." These rules include mechanisms for weeding out at an early stage cases over which federal courts lack jurisdiction and cases so lacking in merit that plenary trials are not needed for just disposition.  Rule 12(b) lists several defenses which may be asserted by an early motion to dismiss.[11]  Rule 56 permits any party to

---

[10]    Defendants do not address ADA or Substantive Due Process claims which the court considers *sua sponte* under its duty to construe *pro se* complaints liberally.

[11]    [A] party may assert the following defenses by motion:
(1)    lack of subject-matter jurisdiction;
(2)    lack of personal jurisdiction;
(3)    improper venue;
(4)    insufficient process;
(5)    insufficient service of process;
(6)    failure to state a claim upon which relief can be granted; and
(7)    failure to join a party under Rule 19.
Fed. R. Civ. P. 12(b).

seek summary judgment on the ground that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law.

Generally, Rule 12 motions to dismiss focus only on factual averments in a plaintiff's complaint. Such motions assert that the complaint fails to allege facts that – even if proved – would entitle the plaintiff to recover. Rule 56 motions for summary judgment focus on the entire record before the court, i.e., the pleadings, discovery, disclosure materials and affidavits submitted, and usually assert that a party with the burden of proof has no evidence with which to establish one or more elements of a cause of action.

Here, defendants invoke both Rule 12 and Rule 56 as bases for dismissal of plaintiff's claims. Accordingly, brief descriptions of the analytical framework for deciding each type of motion is appropriate.

A.     *Rule 12(b) Motions to Dismiss*

A Rule 12(b)(1) motion to dismiss for lack of jurisdiction argues that a complaint fails to aver facts sufficient to invoke the limited jurisdiction of a federal court. A Rule 12(b)(6) motion to dismiss argues that – irrespective of jurisdiction – the complaint fails to aver facts that give rise to legal liability of the defendant. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). <u>Johnson v. Housing Authority of Jefferson Parish</u>, 442 F.3d 356, 359 (5th Cir. 2006); <u>Benton v. United States</u>, 960 F.2d 19, 21 (5th Cir. 1992).

When addressing a Rule 12(b)(6) motion, the court must decide whether the facts alleged, if true, will entitle plaintiff to some legal remedy. <u>See Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is

proper only if there is either: (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint." <u>Lovelace v. Software Spectrum, Inc.</u>, 78 F.3d 1015, 1017 (5th Cir. 1996). The court also may "consider matters of which [it] may take judicial notice." <u>Id.</u> at 1017-18; <u>see</u> Fed. R. Evid. 201(f). Matters of public record, items appearing in the record of the case, and exhibits attached to the complaint also may be considered. <u>See</u> 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004).

The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. <u>See</u> <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982). All well-pleaded facts must be reviewed in the light most favorable to plaintiff. <u>See</u> <u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 514 (5th Cir. 1995).

Courts generally view motions to dismiss for failure to state a claim with disfavor, and, therefore, such motions are granted rarely. <u>Kaiser Aluminum</u>, 677 F.2d at 1050. The Supreme Court instructs that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. Nonetheless, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." <u>Rios v. City of Del Rio</u>, 444 F.3d 417, 421 (5th Cir. 2006).

Although there previously was ambiguity as to minimum requirements of federal notice pleading, it is now clear that to state a cognizable claim, a plaintiff

must plead sufficient factual matter which, if accepted as true, states a claim to relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 129 S. Ct.1937, 1949, 173 L. Ed.2d 868 (2009). The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare or formulaic recitals of a cause of actions's elements, supported by mere conclusory statements. <u>Bell Atlantic, Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d. 209 (1986)); <u>see also</u> <u>Guidry v. Bank of LaPlace</u>, 954 F.2d 278, 281 (5th Cir. 1992) (holding that conclusory allegations and unwarranted deductions of fact are not admitted as true). Therefore, to satisfy Rule 12(b)(6)'s requirement for stating a claim upon which relief can be granted, the pleaded factual content must be sufficient to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. <u>Ashcroft</u>, 129 S. Ct. at 1949.

B.    *Rule 56 Motions for Summary Judgment*

Standards for determining pretrial motions for summary judgment are well-settled. Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>see also</u> Fed. R. Civ. P. 56(c). An issue is *genuine* if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255-56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is *material* when it is relevant or necessary to the ultimate conclusion of the case. <u>Anderson</u>, 477 U.S. at 248.

Summary judgment is proper after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The admissibility of evidence is subject to the same standards and rules that govern the admissibility of evidence at trial. Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 650 n.3 (5th Cir. 1992). In evaluating parties' evidence, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Anderson, 477 U.S. at 255.

*Weighing* parties' *conflicting* evidence is not appropriate at the summary judgment stage: "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury* functions." Id. (emphasis added). At the summary judgment stage, courts must not weigh the evidence and determine which party has the strongest argument; instead, courts must simply determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

A party who moves for summary judgment bears an initial burden of demonstrating an absence of evidence supporting the non-movant's case. Celotex, 477 U.S. at 325. The moving party accomplishes this by offering evidence which undermines one or more of the essential elements of the non-moving party's case, or the moving party may simply demonstrate that the evidence in the record falls short of establishing an essential element of the non-moving party's case. Id. at 323.

After a movant meets its burden, the non-movant must designate specific facts showing there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the court considers the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the non-movant, the non-movant may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial. <u>Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.</u>, 139 F.3d 532, 536 (5th Cir. 1998). However, "[a]ny reservations the court has concerning the evidence will preclude summary judgment." <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264 (5th Cir. 1991).

Local court rules also govern consideration of motions for summary judgment. Local Rule CV-56(b) states:

> Any party opposing the motion should serve and file a response that includes in the text of the response or as an appendix thereto, a "Statement of Genuine Issues." The response should be supported by appropriate citations to proper summary judgment evidence as to which it is contended that a genuine issue of material fact exists. Proper summary judgment evidence should be attached to the response in accordance with the procedure contained in section (d) of this rule.

### VI. Whistleblower Protection Act of 1989

Thomas contends that Norris's conduct toward him was illegal; that he disclosed same through BISD's grievance procedures; and that he was then reprimanded by Assistant Superintendent Fischenich and ultimately transferred and demoted in rank and pay as a reprisal for engaging in whistleblowing activity.

### A. Statutory Scheme

WPA was enacted to protect "against agency reprisals for whistleblowing activity, such as disclosing illegal conduct, gross mismanagement, gross wasting of funds or actions presenting substantial dangers to health and safety." Charles

R. Richey, 1 Manual on Employment Discrimination § 10:4 (2008) (citing Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002)) (emphasis added); see 5 U.S.C. § 2302(b)(8). WPA prohibits adverse employment actions against a *federal* employee who "discloses information that [he] reasonably believes evidences a violation of any law or actions that pose a substantial and specific danger to public health or safety." Jackson v. Signh, No. H-06-2920, 2007 WL 2818322, at *12 (S.D. Tex. Sept. 25, 2007) (citing Grisham v. United States, 103 F.3d 24, 26 (5th Cir. 1997)); 5 U.S.C. § 2302(b)(8).

Under the statutory scheme set forth in Title 5 of the U.S. Code, an employee who believes he is the victim of an unlawful reprisal must first bring his claim to the federal Office of Special Counsel (OSC), which investigates the complaint. 5 U.S.C. § 1214; Weber v. United States, 209 F.3d 756, 758 (D.C.Cir. 2000) (describing whistleblower protection procedures under Title 5). If the OSC finds that there *was* a prohibited personnel action as defined by § 2302, it reports its findings to the Merit Systems Protection Board (MSPB), and *it* can petition the MSPB on the employee's behalf. Weber, 209 F.3d at 758. If OSC finds *no agency wrongdoing*, then the *employee* may bring an action before the MSPB. 5 U.S.C. §§ 1221; 1214(a)(3); Weber, 209 F.3d at 758. If dissatisfied with OSC's and MSPB's handling of the matter, employees may seek judicial review of adverse MSPB rulings in the Court of Appeals for the Federal Circuit or, in a "mixed case," in a federal district court. 5 U.S.C. §§ 1214(c), 7703(b)-(c); see Barnes v. Small, 840 F.2d 972, 979 (D.C. Cir. 1988).

Under no circumstances, however, does WPA grant the federal district courts jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance. Stella, 284 F.3d at 142. Consequently, exhaustion of these administrative remedies is a jurisdictional prerequisite to obtaining

judicial review in any federal court. See Stella, 284 F.3d at 142-44 (district court properly dismissed plaintiff's WPA claim on jurisdictional grounds when she failed to exhaust her administrative remedies); see also Richards v. Kiernan, 461 F.3d 880, 885-86 (7th Cir. 2006) (stating that exclusive remedy for claims brought under the WPA is the Civil Service Reform Act, which requires complaints to be brought to the MSPB, then the Federal Circuit); Hendrix v. Snow, 170 F. App'x 68, 78-79 (11th Cir. 2006); Harris v. Evans, 66 F. App'x 465, 466-67 (4th Cir. 2003); Grisham v. United States, 103 F.3d 24, 26 (5th Cir. 1997) (stating that a plaintiff's WPA remedies are exclusively those provided under the Civil Service Reform Act).

## B. Application

Thomas's purported WPA claim fails for two reasons. First, Thomas did not file a complaint with OSC or obtain a ruling from MSRB before bringing this suit. Consequently, the court lacks subject-matter jurisdiction, and this claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). See Limardo v. Barreto, No. 04-1343, 2006 WL 2795554, at *4 (D. Puerto Rico Sept. 26, 2006) (dismissing WPA claim under 12(b)(1) for failing to exhaust administrative remedies); Spriggs v. Brownlee, No. 5:04-CV-00968, 2006 WL 1304861, at *6 (N.D.N.Y. May 9, 2006) (same). Second, Thomas was not a *federal* employee when the alleged whistleblowing actions and reprisals occurred. Consequently, he lacks standing to sue under this act, and fails to state a claim upon which relief can be granted.[12]

---

[12] Thomas's response to defendants' motion for summary judgment states that he has "sued defendants for alleged violations of **federal law**" which "includes [violations of] the **Whistleblower Protection Act** of 2001 and his 'civil rights.'" See Pl.'s Resp. to Defs. Mot. for Summ. J., ¶ 2, May 14, 2009 (emphasis added). The court recognizes that Texas has a similar whistleblower statute codified in Tex. Gov't Code § 554.001, *et. seq.,* and if any of Thomas's other causes of action survive defendants' motion to dismiss, the court, in light of its duty to consider *pro se* pleadings liberally, might be obligated to determine whether to entertain a state-law-based whistleblower claim under its supplemental jurisdiction.

## VII.   Title VII

Thomas alleges that he is a victim of discrimination rendered unlawful by Title VII in that he was subjected to a hostile work environment and then reprimanded, transferred and demoted in rank and pay for engaging in a protected activity of reporting and complaining of such discrimination.

### A.   Statutory Scheme

Title VII prohibits discrimination in the workplace on the basis of "race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2. To enhance compliance with federal policy for equal employment opportunities for these protected classes of employees, Title VII authorizes persons who believe themselves to be victims of unlawful discrimination to bring private enforcement causes of action after exhausting administrative remedies. 42 U.S.C. § 2000e-5(f)(1). Title VII, however, is not a panacea for *all* workplace injustices, nor does it prescribe a "general civility code for the American workplace . . . ." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Rather, Title VII addresses only a limited and discrete set of practices that Congress prohibits. It simply is not enough to show unfair or arbitrary treatment or retaliation unrelated to these categories. Title VII does not protect workers from personal animosity and obnoxious behavior in the abstract. See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

A precondition of filing a Title VII suit in federal district court is exhaustion of administrative remedies. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002) (citing Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996)). Before instituting suit, aggrieved employees must first make a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and secure from the EEOC a "right-to-sue" letter.

Taylor, 296 F.3d at 378-79; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Upon successfully instituting suit, plaintiffs may prove Title VII claims either by direct or circumstantial evidence. See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). When, as here, a plaintiff relies on circumstantial evidence, courts use a modified "McDonnell Douglas test" that involves shifting burdens of production to determine whether the action warrants a plenary trial. McDonnell Douglas Corp., 411 U.S. at 802-804; Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (describing the Fifth Circuit's modified McDonnell Douglas approach to employment discrimination cases where mixed-motive analysis might apply). Under this test, a plaintiff must first establish a *prima facie* case of his Title VII cause of action. The burden then shifts to the employer/defendant to provide a legitimate, non-discriminatory or non-retaliatory reason for its actions. McDonnell Douglas Corp., 411 U.S. at 802-04; McCoy, 492 F.3d at 557 (applying McDonnell Douglas test to retaliation case); Hayatdavoudi v. Univ. of La. Sys. Bd. of Trustees, No. 00-30389, 2000 WL 1835143, *3 (5th Cir. 2000) (applying McDonnell Douglas test to hostile work environment case). When the defendant employer rebuts the *prima facie* case, the burden then shifts back to the plaintiff to show that either: (1) the reason provided is not true and is actually a pretext for the prohibited discrimination or retaliation (the "pretext alternative"), or (2) the reason provided is true, but is only one of the reasons for the conduct, and another reason is the employee's protected characteristic (the "mixed-motive alternative"). McDonnell Douglas Corp., 411 U.S. at 802-04; Keelan, 407 F.3d at 341; see also McCoy, 492 F.3d at 557.

Title VII jurisprudence recognizes causes of action for hostile work environments and for retaliations against workers who engage in activities

protected by Title VII, such as filing administrative charges with the EEOC. The elements of such causes of action are separate and distinct.

1.  <u>Hostile Work Environment Claims</u>

A *prima facie* case of hostile work environment is established by evidence that: (1) the employee is a member of a protected class; (2) he was subject to unwelcome harassment *based on race, gender, religion, or national origin*; (3) the harassment affected a term or condition of his employment; and (4) the employer knew or should have known about the harassment and failed to take prompt remedial action. <u>See</u> <u>Turner v. Baylor Richardson Medical Center</u>, 476 F.3d 337, 347 (5th Cir. 2007); <u>see</u> 42 U.S.C. § 2000e-2(a)(1). Title VII is violated only "[w]hen the workplace is *permeated* with 'discriminatory intimidation, ridicule, and insult' that is *'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'"* <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (<u>quoting</u> <u>Meritor Sav. Bank</u>, <u>FSB v. Vinson</u>, 477 U.S. 57, 65-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (emphasis added and internal citations omitted). The conduct must be severe enough to create an objectively hostile environment based on the victim's race, gender, religion, or national origin, and the victim must himself subjectively perceive it to be hostile. <u>Id.</u> at 21-22 (stating that unless the victim actually perceives the conduct to be hostile it could not have altered the conditions of employment).

Courts employ a "totality-of-the-circumstances" test to determine when a hostile work environment existed. <u>Turner</u>, 476 F.3d at 347. Thus, courts examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." <u>Harris</u>, 510 U.S. at 23.

    2.   <u>Retaliation and Reprisal</u>

A *prima facie* case of retaliation is actionable under Title VII when established by evidence that: (1) an employee engaged in *protected activity*; (2) an *adverse employment action* occurred; and (3) a *causal link* exists between the protected activity and the adverse employment action. <u>Turner</u>, 476 F.3d at 348; <u>see</u> 42 U.S.C. § 2000e-3(a) (primary source of protection against retaliation for those opposing discrimination or participating in the Title VII process). These three elements use terms of art that are not self explanatory. Thus, they require further elaboration:

    *a.*   *Protected Activity*

This term encompasses opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and participation in Title VII processes (including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII) (the "participation clause"). 42 U.S.C. 2000e-3(a). When proceeding under the *opposition clause*, plaintiffs need not prove that the discriminatory practices alleged were unlawful in fact; but rather that they had a reasonable belief that such conduct constituted unlawful employment practices protected by Title VII. <u>Turner</u>, 476 F.3d at 348; <u>De Anda v. St. Joseph Hosp.</u>, 671 F.2d 850, 853 n.2 (5th Cir. 1982). When proceeding under the *participation clause*, there is no "reasonable belief" requirement; however, the plaintiff may be required to show that he made his claim alleging discrimination in good faith. <u>See</u> <u>Pettway v. American Cast Iron Pipe Co.</u>, 411 F.2d 998, 1007 (5th Cir. 1969) (holding that letter to EEOC was

protected activity even though it contained false, but not malicious, accusations); Mattson v. Caterpillar, Inc., 359 F.3d 885, 891-92 (7th Cir. 2004) (holding that a good faith, reasonable requirement applies to retaliation claims based on the participation clause).

### b. *Adverse Employment Action*

This term encompasses any act that a reasonable employee would find to be materially adverse; that is, the act is such that it might well "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006); see also McCoy, 492 F.3d at 559.

### c. *Causal Link*

To satisfy this element, the complaining employee must show that "the employer's [adverse] decision . . . was based in part on knowledge of the employee's protected activity." Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998). Therefore, the causal link required to satisfy this element is less stringent than the "but for" standard used in the ultimate determination; plaintiff "need not prove that [his] protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996) (citing De Anda, 671 F.2d at 857 n.12).

## B. *Application*

Thomas contacted the EEOC about his perceived discriminatory treatment, but he did not pursue his accusations by filing a formal administrative charge. Consequently, EEOC never issued a determination, nor did it issue

to Thomas a "right-to-sue" letter which is a precondition to a private cause of action. Accordingly, defendants are entitled to dismissal under Rule 12(b)(6) or to summary judgment under Rule 56 on both of Thomas's Title VII claims due to his failure to comply with a precondition for instituting a private, Title VII cause of action, <u>viz.</u>, exhausting all available administrative remedies.[13]

The exhaustion deficiency aside, Thomas fails in any event to allege a cognizable hostile work environment claim. He does not allege – and at the evidentiary hearing affirmatively disavowed – any suggestion that any of defendants' alleged wrongful actions were taken on account of Thomas's race, color, sex, religion, or national origin. Moreover, while Norris's alleged conduct

---

[13]     Dismissals of Title VII claims for failing to exhaust administrative remedies are not based on lack of subject-matter jurisdiction. See <u>Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)</u> ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); <u>see also</u> <u>Womble v. Bhangu</u>, 864 F.2d 1212, (5th Cir. 1989)(dismissing for lack of subject-matter jurisdiction because plaintiff did not file Title VII claim with EEOC was error).

    Despite clarification from <u>Zipes</u>, the proper procedural mechanism for dismissing a Title VII claim for failure to exhaust administrative remedies remains nebulous. In <u>Cruce v. Brazosport Independent School Dist.</u>, 703 F.2d 862, 863-64 (5th Cir. 1983), the court granted a Rule 56 summary judgment based on the plaintiff's failure to exhaust administrative remedies first. But, in <u>Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 n. 4 (5th Cir. 2004), the court stated that Rule 12(b)(6) forms a proper basis for a failure-to-exhaust dismissal.

    Other circuits' jurisprudence mirror the same ambiguity. In <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1022 (3rd Cir. 1997), the Third Circuit stated that "timeliness of exhaustion requirements are be resolved under Rule 12(b)(6) covering motion to dismiss for failure to state claim." <u>Robinson</u>, 107 F.3d at 1022. But in a later case citing <u>Robinson</u>, the same court stated "failure to exhaust administrative remedies is an affirmative defense . . . the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." <u>Williams v. Runyon</u>, 130 F.3d 568, 573 (3rd Cir. 1997) (citing <u>Robinson V. Dalton</u>, 107 F.3d 1018, 1021 (3rd Cir. 1997).

    Given that exhaustion of administrative remedies is a "precondition" to filing suit (<u>Taylor</u>, 296 F.3d at 378-79), it is analytically synonymous with a "condition precedent" which a plaintiff must plead. See Fed. R. Civ. P. 9(c); <u>Equal Employment Opportunity Commission v. Standard Forge Axle Co.</u>, 496 F.2d 1392, 1395 (5th Cir. 1974). Thus, Rule 12(b)(6) normally would supply the proper basis for a failure-to-exhaust dismissal. But, when matters outside the pleadings are relied on by the court in determining lack of exhaustion, or when a plaintiff invokes waiver, equitable tolling or  estoppel to excuse lack of exhaustion, Rule 56 will be a more appropriate vehicle.

    Finally, in *pro se* cases, where the court may examine not only a plaintiff's formal complaint, but also sworn testimony at a *Spears* hearing, motions, briefs and other papers submitted by the plaintiff to determine the nature and scope of the action, any differences between Rule 12 and Rule 56 dismissals based on failure to exhaust are largely semantical.

arguably constituted much more than a mere offensive utterance, it was, nonetheless, but a single instance of humiliation. There is no evidence that such conduct was pervasive, or permeated the workplace, or was so severe as to alter conditions of employment. Instead, Thomas remained as an assistant or vice principal, and was compensated at the higher rate pertaining thereto (except when on voluntary disability leave) for another sixteen months at different campuses until his temporary certification to serve as an assistant principal expired. These facts do not allege or establish a *prima facie* case of hostile work environment under Title VII.[14]

Similarly, Thomas fails to establish the first element of a *prima facie* case for actionable retaliation. He proceeds under the "opposition clause" because he subjectively believes he was subject to retaliation because he opposed Norris's conduct by complaining to and filing a complaint with his superiors, and taking part in an internal grievance procedure. Thomas must demonstrate that he had an *objectively reasonable* belief that Norris's conduct – about which Thomas grieved – was an unlawful employment practice *prohibited by Title VII,* i.e, discrimination and adverse employment actions *based on* a worker's race, color gender, religion, or national origin. Throughout his complaints, Thomas never mentions race, color or other protected status as being the reason he was treated unfairly. He did not *subjectively* believe he was being harassed based on one of these protected characteristics, and it was not *objectively* reasonable for him to believe that during the grievance process he was complaining of activity

---

[14]     Defendants emphasized in their briefing that race or color based discrimination was not at play because the primary defendants, Norris and Carrol Thomas, and most of the staff who interacted with Thomas are also black. Plaintiff responded that his Title VII claim should not be foreclosed merely because defendants Norris and Carrol Thomas are also black.

     Intra-racial discrimination is actionable under Title VII. See <u>Hansborough v. City of Elkhart Parks & Recreation Dept.</u>, 802 F. Supp. 199, 206 (N.D. Ind. 1992); <u>see also</u> <u>Mitchell v. National R.R. Passenger Corp.</u>, 407 F. Supp.2d 213, 236 (D.D.C. 2005). However, it is not enough to merely identify a potential cause of action. Thomas must also allege facts which, if proven, will entitle him to relief. Here, he disavows any suggestion that the allegedly harassing acts of any defendants were based on race or color.

proscribed under Title VII.  See, e.g., Turner, 476 F.3d at 349 (holding that it was not reasonable to believe that email containing no reference to discriminatory conduct constituted unlawful employment practice under Title VII); Watts v. Kroger Co., 170 F.3d 505, 511 (5th Cir. 1999) (finding that complaints to manager regarding supervisor's comments about personal life did not constitute protected activity because employee did not report sexual harassment).  Under that circumstance, even if retaliation did occur, it is not actionable under Title VII.

## VIII.  Due Process

Thomas repeatedly complains in multiple documents submitted to the court that the defendants violated his constitutional right to due process of law. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of the law."  U.S. CONST. amend XIV.  Interpretive jurisprudence recognizes that this clause provides both *procedural* and *substantive* protections.

### A.  *Procedural Due Process*

Deprivation of a constitutionally-protected life, liberty, or property interest is actionable only if the deprivation is without due process of the law. Zinermon v. Burch, 494 U.S. 113, 124-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In procedural due process cases, therefore, courts employ a *sequential* analysis. The analysis begins with an inquiry into whether challenged conduct affected a life, liberty or property interest protected by the Constitution.  Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).  If so, the second step is to determine whether the level of process afforded to the plaintiff was deficient.  This second inquiry involves a three-pronged, balancing of

interests articulated in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[15]    Finally, when the level of process afforded was inadequate, the court determines what additional process is due.    In that respect, Due Process is a flexible concept, calling only for "such procedural protections as the particular situation demands." <u>See</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

1.    <u>Property Interests</u>

To allege a deprivation of a property interest protected under the Fourteenth Amendment, the plaintiff must demonstrate a "legitimate claim of entitlement" to that interest.    <u>Board of Regents v. Roth</u>, 408 U.S. 564, 92 S.Ct. 2701, 88 L.Ed.2d 548 (1972).  Public employment may endow an employee with a legally cognizable property interest.  <u>Cleveland Bd. of Ed. v. Loudermill</u>, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  However, a property interest is not inherent in public employment, instead it must be created by an independent source, such as state law.  <u>Perry v. Sindermann</u>, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); <u>Conner v. Lavaca Hosp. Dist.</u> 267 F.3d 426 (5th Cir. 2001).

Generally, a property interest is created when a public entity has acted to confer, or alternatively, has created conditions which infer, existence of a

---

[15]     The court considers and weighs:
(1)    The private interest affected by government action;
(2)    The risk of an erroneous decision inherent in the procedure employed, along with the probable value of any additional or different procedural safeguard; and
(3)    The government's interest, including fiscal and administrative burdens involved in providing additional or substituted procedures.
<u>Mathews v. Eldridge</u>, 424 U.S. at 334-35.

property interest by abrogating its right to terminate an employee without cause. Muncy v. City of Dallas, Tex., 335 F.3d 394, 398 (5th Cir. 2003). This abrogation may take the form of a statute, rule, handbook, or policy which limits the condition under which the employment may be terminated, Henderson v. Sotelo, 761 F.2d 1093, 1096 (5th Cir. 1985) (quoting Perry, 408 U.S. at 602-03, 92 S.Ct. at 2700); or it may take the form of a more particularized mutual understanding with the employee. Stapp v. Avoyelles Parish School Board, 545 F.2d 527 (5th Cir. 1977) ; Perry, 408 U.S. at 602, 92 S.Ct. at 2700.

Ultimately, however, the question of whether a property interest exists is an individualized inquiry which is guided by the specific nature and terms of the particular employment at issue, and informed by the substantive parameters of the relevant state law. Muncy, 355 F.3d at 298. With respect to public educators, a constitutionally protected property interest exists if the public educator can "demonstrate a reasonable expectation of continued employment." Coats v. Pierre, 890 F.2d 728, 732 (5th Cir. 1989); see also Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970); Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970).

2.    Liberty Interest

A public employer unconstitutionally deprives its employees of a liberty interest when it subjects them to adverse employment actions under stigmatizing circumstances without giving the employees an opportunity to clear their names. Arrington v. County of Dallas, 970 F.2d 1441, 1447 (5th Cir. 1992). To support a claim for deprivation of the right to a name-clearing hearing plaintiffs must establish that they were public employees, that they were subjected to an adverse employment action, that stigmatizing charges were made against them in connection with the adverse employment action, that the charges were made public, that the charges were false, that they requested name-clearing hearings,

and that the hearings were denied. Id. The public charges must be so stigmatiz-
ing that they create a "badge of infamy" that destroys plaintiff's ability to obtain
other employment. Evans v. City of Dallas, 861 F.2d 846, 851 (5th Cir.1988).

3.  Application

a.  *Were Protected Property Interests Deprived?*

Plaintiff asserts deprivation by defendants of two protected property
interests: (1) his job assignment as assistant principal and (2) his right to be
reassigned at the same level of pay. Defendants argue that they are entitled to
summary judgment on these claims because plaintiff has no protected property
interest in continued employment as an assistant principal. Additionally,
defendants argue that plaintiff has no protected property interest in being
reassigned at the same level of pay because expiration of his certification to
serve as vice principal rendered him unqualified to remain in that position and
therefore ineligible to collect the same salary.

i.  Reassignment (assistant principal to teacher)

Employees have no protected property interest in *non-economic benefits*
such as work assignments. Kinsey v. Salado Independent School Dist., 950 F.2d
988, 997 (5th Cir) (en banc), cert. denied, 504 U.S. 941, 119 L.Ed.2d 201 (1992)
(no constitutionally protected property interest in non-economic benefit of
serving as superintendent); Davis v. Mann, 882 F.2d 967, 973 n.16 (5th Cir.
1989) (unless the state specifically creates a property interest in a non-economic
benefit – such as a work assignment – a property interest in employment
generally does not create a due process property protection for such benefits); see
also Johnson v. Houston Independent School Dist., 930 F.Supp. 276, 286-87 (5th
Cir. 1996). Plaintiff's employment contract specifically states that "[e]mployee

shall be subject to assignment and reassignment of positions or duties, changes in responsibilities or work, transfers, or reclassification at any time during the contract term." <u>See</u> Pl.'s Compl., Ex. 11, Attach. Y, ¶ 4, August 17, 2007; Pl.'s Reply, Ex. 4, October 5, 2009. Thus, plaintiff proffers no evidence establishing a protected property interest in his work assignment as assistant principal.

### ii. <u>Reassignment (lower pay-grade)</u>

A public employee's interest in his or her salary normally *is* a property interest protected by the Constitution because salary is an economic benefit. <u>Eguia v. Tompkins</u>, 756 F.2d 1130, 1138 (5th Cir. 1985) (citing <u>Sniadach v. Family Finance Corp.</u>, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). However, a public school teacher whose certification lapses has no protected property interest in continued employment because he cannot comply with a contract which requires certification. <u>Nunez v. Simms</u>, 341 F.3d 385, 392 (5th Cir. 2003); <u>see</u> <u>also</u> <u>Montez v. South San Antonio ISD</u>, 817 F.2d 1124 (5th Cir. 1987) (stating that an uncertified teacher had no property right to continued employment). Additionally, in <u>Frazier v. Garrison ISD</u>, 980 F.2d 1514 (5th Cir. 1993), the 5th Circuit concluded that once a teacher's certification validly terminates, the school board may, without a hearing, terminate the teacher notwithstanding that her fixed term contract has not expired.

Thomas's certification, like the plaintiffs in <u>Nunez</u> and <u>Frazier</u>, expired during the term of his contract. However, Thomas, unlike the plaintiffs in <u>Nunez</u> and <u>Frazier</u>, was not terminated but merely transferred to a lower paying position for which he was qualified. Once the certification expired, Thomas's contract to serve as vice principal became void because he was no longer qualified to hold the position. Therefore, plaintiff had no property interest in continued employment after his certification lapsed.

### b. Were Protected Liberty Interests Deprived?

Plaintiff has failed to allege or produce evidence that "stigmatizing" charges were made against him, or that any such charges were made public, or that he requested name-clearing hearings, or that any requested hearings were denied, or that any charges made against him damaged or destroyed other employment opportunities. Plaintiff has thus failed to raise a genuine issue of material fact concerning either existence or violation of a liberty interest protected by the Fourteenth Amendment.

### c. Was Process Adequate?

Even if Thomas had property interests in reassignment at the same classification and level of pay, or a liberty interest in clearing his good name, the process afforded to him was ample and adequate. The root requirement of procedural due process is that an individual be given *notice* and an *opportunity to be heard* before being deprived of a property or liberty interest. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 541 & 544-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). An employer provides procedural due process when it provides its employees notice and an opportunity to tell their side of the story. <u>Rosenstein v. City of Dallas, Tex.</u>, 876 F.2d 392, 395 (5th Cir. 1989).

Plaintiff was notified by letter of his reassignment to a classroom teacher at a lower pay grade. <u>See</u> Pl.'s Compl., Ex. 11, Attach W, ¶ 4, August 17, 2007. Pursuant to BISD's Personnel-Management Relations, Employee Complaints/Grievances Policy, plaintiff was entitled to file a grievance if he believed his reassignment to a lower pay grade was inequitable. <u>See</u> Pl.'s Reply, Ex. 2, Attach. A, October 5, 2009. Plaintiff was aware of his right to file a grievance because he previously used grievance procedures to challenge his reprimand as a result of his confrontation with Norris. Additionally, plaintiff admits in his October 13, 2009 supplemental response to defendants' motion for summary

judgment that he was aware of his right to file a grievance, but specifically chose not to.

### d. Summary and Conclusion

Defendants are entitled to summary judgment regarding claims of deprivation of a protected property or liberty interest on dual grounds. First, Thomas fails to present competent evidence to establish that he was deprived of a protected property or liberty interest. Second, Thomas fails to present competent evidence to establish that the process available to him upon being transferred to classroom teacher at a lower grade of pay was, in any event, inadequate. The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions, it merely ensures that there must be notice and a meaningful opportunity to be heard, and such opportunity was provided in this regard. See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (quoting Bishop v. Wood, 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).[16]

## B. Substantive Due Process

The conceptual essence of "substantive" due process is the notion that the Due Process Clause – in addition to setting procedural minima for deprivations of life, liberty, or property – bars outright "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). One example is the substantive protections in the Bill of Rights that have been "incorporated" into the Fourteenth Amendment to limit the power of the states. Brennan v.

---

[16] Thomas also appears to contend that Due Process protected him against wrongful accusations by his employer. There is, however, no property or liberty interest in being free from wrongful accusations. See Bessman v. Powell, 991 F.Supp. 830, 836 (S.D.Tex., 1998) (citations omitted).

Stewart, 834 F.2d 1248, 1255 (5th Cir. 1988).  Another form is the judicial ban on laws or actions by government officials that "shock the conscience" and thus fall outside the bounds of legitimate governmental activity.  Id.

Claims based on substantive due process in public employment require two showings: (1) a property interest/right in such employment, and (2) arbitrary or capricious termination of that interest by an employer.  Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. 1994) (quoting Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir.1993)); Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1986).  And, when reviewing academic decisions, courts must determine whether the governmental action was "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  Regents of University of Michigan v. Ewing, 474 U.S. 214, 223 n. 4, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985).

Plaintiff's allegations regarding transfer and demotion implicate only the second category of substantive due process.  But, as determined earlier, he has not produced competent evidence establishing a protected property or liberty interest or other right to continued employment as an assistant principal at a higher pay grade.  Nor has he produced evidence establishing that BISD's or any defendant's action in transferring him to a lower-paid position of classroom teacher was arbitrary and not reasonably related to a legitimate governmental interest.

To survive BISD's motion for summary judgment on this issue, plaintiff must present evidence from which a reasonable jury could conclude that there was no rational academic basis for the decision to reduce plaintiff's pay grade. A decision to transfer a teacher to a lower pay grade because that employee's temporary certification to work at a higher pay grade expired, has a rational

academic basis – the employee was no longer qualified to hold the position – and it does not shock the judicial or any conscience. What would shock the conscience and have no rational academic basis would be just the opposite, i.e., continuing to employ an assistant principal who did not have the requisite certification to hold the position in violation of Texas Educational Code §§ 21.003(a)[17] and 21.053(b)[18].

Rather than terminate plaintiff when his temporary certification expired, BISD transferred him to the position of classroom teacher; a position with an inherently lower pay grade. Because this decision to reassign plaintiff to a lower pay grade was not arbitrary and capricious, and was rationally related to the legitimate government interest of complying with applicable Texas educational laws, plaintiff fails to produce evidence to establish the essential elements of a substantive due process cause of action. Summary judgment must be granted in favor of defendants on this claim.

## IX.  First Amendment

Plaintiff's complaints and his sworn testimony at the March 2008 hearing, included no claim that defendants violated his right to freedom of speech or other rights guaranteed by the First Amendment.[19]  In his October 13, 2009, supplemental response to defendants' motion for summary judgment, he advances a First Amendment claim. Specifically, Thomas contends that he

---

[17]     Texas Educational Code § 21.003 states that "[a] person may not be employed as a[n] . . . administrator . . . unless the person holds an appropriate certificate or permit issued as provided by Subchapter B."

[18]     Texas Educational Code § 21.053 states that "[a]n educator who does not hold a valid certificate may not be paid for teaching or work done before the effective date of issuance of a valid certificate."

[19]     "Congress shall make no law . . .abridging the freedom of speech, or of the . . . people to . . . petition the Government for a redress of grievances." U.S. Const. amend. I.

engaged in protected speech when reporting his confrontation with Norris and petitioning for redress. He contends that he was subject to retaliation for engaging in such speech.

*A.     Elements of Cause of Action*

The First Amendment provides protection against retaliation for engaging in protected speech in the course of employment under certain circumstances. To establish a retaliation claim under the First Amendment, the plaintiff must prove that: (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency (balancing under <u>Pickering v. Board of Education</u>, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)), and (4) his speech was a substantial or motivating factor behind the defendant's actions. <u>James v. Texas Collin County</u>, 535 F.3d 365, 375 -376 (5th Cir. 2008) (quoting <u>Harris v. Victoria Indep. Sch. Dist.</u>, 168 F.3d 216, 220 (5th Cir. 1999).

Whether an employee's speech addresses a matter of public concern turns on whether the affected individual speaks "primarily as a citizen rather than as an employee." <u>Dorsett v. Bd. of Trustees State Colleges & Universities,</u> 940 F.2d 121, 124 (5th Cir. 1991). Additionally, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." <u>Communications Workers of America v. Ector County Hosp. Dist.</u>, 467 F.3d 427, 437 (5th Cir. 2006) (quoting <u>Connick v. Meyers</u>, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

Here, all relevant speech arose from the confrontation and internal disagreement between Thomas, as assistant principal, and Norris, as principal. When Thomas reported the incident to the Superintendent and Assistant

Superintendent, he spoke as an employee about an internal disagreement as opposed to a citizen on a matter of broad public concern. Therefore, Thomas' speech was not on a matter of public concern and is not protected under the First Amendment.

Even if plaintiff's speech were a matter of public concern and thus protected by the First Amendment, defendants nevertheless would be entitled to summary judgment. Thomas has failed to adduce any evidence that his speech, as opposed to some other catalyst – such as expiration of his temporary certification to serve as assistant principal – motivated BISD to reassign him and lower his pay. Thomas was reassigned approximately seven months after the conclusion of the lengthy grievance proceedings. Temporal proximity between protected conduct and an alleged retaliatory employment action is to be considered in a retaliation case, but is not, by itself, conclusive. <u>Shirley v. Chrysler First, Inc.</u>, 970 F.2d 39, 44 (5th Cir. 1992). Here, the lapse of sixteen months between the allegedly protected speech and the demotion – coupled with undisputed evidence that the challenged action occurred simultaneously with expiration of his temporary certification to serve as assistant principal – is insufficient to raise a genuine issue of material fact as to whether Thomas's speech motivated BISD or any other defendant.

## X. Americans With Disabilities Act

Thomas does not explicitly mention or attempt to assert a claim under Title I of the American with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq*. Because he twice availed himself of BISD's temporary disability leave policy based on post-traumatic stress disorder, however, the court should, in an abundance of caution, consider whether Thomas has alleged facts that when proven would trigger liability of any defendant under this federal statute.

*A.    Statutory Scheme*

ADA prohibits employment discrimination against a qualified individual with a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).[20]  The statute also protects employees who seek relief under its provisions from retaliatory discharge. See 42 U.S.C. 12203(a), stating that employers may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . .." And, whenever any employer has engaged, or there are reasonable grounds to believe that the employer is about to engage in any act prohibited by ADA, a private, civil enforcement action may be instituted by the person aggrieved. See 42 U.S.C. § 2000a-3(a); 28 C.F.R. § 36.501(a).

A *prima facie* case of ADA-proscribed discrimination may be established by either direct or circumstantial evidence.  Burch v. Coca-Cola Co., 119 F.3d 305, 320 (5th Cir. 1997).  To establish a *prima facie* case by direct evidence a plaintiff must show: (1) that he has a disability;[21] (2) that he was qualified for

---

[20]    Congress recently enacted the ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008). Although these amendments took effect January 1, 2009, the changes were not intended to apply retroactively. See EEOC v. Agro Distrib., LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009). As a result, the court will not discuss or apply the amendments in the present analysis.

[21]    Not every impairment constitutes an actionable disability.  ADA defines a disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such impairment.

42 U.S.C. § 12102(2); see also Raytheon Co. v. Hernandez, 540 U.S. 44, 49, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003).

the job; and (3) that he was subject to an adverse employment decision because of his disability.  <u>Ivy v. Jones</u>, 192 F.3d 514, 516 (5th Cir. 1999). Cases based on circumstantial evidence are analyzed under the familiar *McDonnell Douglas* burden-shifting framework.  <u>EEOC v. Chevron Phillips Chem. Co., LP</u>, 570 F.3d 606, 615 (5th Cir. 2009).

Finally, and as with Title VII cases, an ADA plaintiff must first exhaust administrative remedies by filing a charge with the EEOC or with a state or local agency before commencing a case in federal court.  <u>Dao v. Auchan Hypermarket</u>, 96 F.3d 787, 789 (5th Cir. 1996) ("Employee must comply with ADA's administrative prerequisites prior to commencing an action in federal court against employer for violation of the ADA").

## B. Application

As noted earlier, plaintiff failed to file any charge whatsoever with the EEOC or any other state or local agency.  Therefore, any ADA claim would have to be dismissed pursuant to Rule 12(b)(6) or Rule 56.  <u>See</u> n. 14, above.

## XI.  Conclusion

For all of the reasons stated above, defendants are entitled to dismissal of all claims pursuant to Rules 12 and 56, Federal Rules of Civil Procedure.[22]

SIGNED this 16 day of November, 2009.

_Earl S. Hines_
Earl S. Hines
United States Magistrate Judge

---

[22]    Because all claims are disposed of under the foregoing analysis, it is unnecessary to address defendants' other defenses of qualified immunity, professional immunity and punitive damages.